### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| MELVIN A. PRINCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 24-370-MU |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Melvin A. Price brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 6 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case…order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and oral argument presented at the April 14, 2025, hearing before the undersigned

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted for Michelle King as the defendant in this action.

Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

## I.  PROCEDURAL HISTORY

Prince applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on September 23, 2019, alleging disability beginning on September 1, 2019. (Doc. 10, PageID.235-237). His application was denied at the initial level of administrative review on January 16, 2020, upon reconsideration on March 9, 2020, and, after a hearing, by Administrative Law Judge (ALJ) Robert Waller on September 15, 2020. (Doc. 10, PageID.45-64). The Appeals Council denied review of othe the ALJ's decision on January 12, 2021. (Doc. 10, PageID.28-40). On April 19, 2022, the U.S. District Court reversed and remanded the Commissioner's final decision. (Doc. 10, PageID.702-730). The Appeals Council then remanded the decision back to the ALJ on June 15, 2022. (Doc. 10, PageID.790-794). In its remand order, the Appeals Council noted that Prince had filed a subsequent claim for Title II and Title XVI disability benefits on March 17, 2021, and instructed the ALJ to consolidate Prince's two claim files, associate the evidence, and issue a new decision on the consolidated claims. (Doc. 10, PageID.792).

After the remand, Prince testified again before ALJ Robert Waller on January 30, 2023. (Doc. 10, PageID.683-700). ALJ Waller again issued an unfavorable decision on February 15, 2023. (Doc. 10, PageID.806-830). The Appeals Council then remanded the case to a different Administrative Law Judge on September 8, 2023. (Doc. 10, PageID.831-836). In its remand order, the Appeals Council instructed the ALJ to: (1)

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 6. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

2

consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims (as directed by the prior remand order), (2) evaluate the nature and severity of the claimant's headaches, and (3) give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations. (Doc. 10, PageID.834). Prince then testified at a hearing before ALJ Laura Robinson on March 18, 2024. (Doc. 10, PageID.661-682). ALJ Robinson issued an unfavorable decision on June 21, 2024. (Doc. 10, PageID.636-660).

Prince filed exceptions with the Appeals Council, but he withdrew his exceptions to pursue his claim in district court, rendering the ALJ's decision final. (Doc. 10, PageID.625).  After exhausting his administrative remedies, Prince sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed the social security transcript on January 8, 2025. (Doc. 10). Both parties filed briefs setting forth their respective positions. (Docs. 11, 12). Oral argument was held before the undersigned Magistrate Judge on April 14, 2025. (Doc. 14).

## II.  CLAIMS ON APPEAL

Prince alleges the ALJ committed reversible error in violation of Social Security Regulations 20 C.F.R. §416.945, 20 C.F.R. §404.1545, and Social Security Ruling 96-8p in that the ALJ's residual functional capacity ("RFC") determination at the fifth step of the sequential evaluation process was not supported by substantial evidence. (Doc. 11, PageID.1372).

## III. BACKGROUND FACTS

Prince was born on June 27, 1979, and was forty years old on his alleged onset date and forty-five years old on the date he was last insured for DIB. (Doc. 10, PageID.235). He has an 11th grade education and past work experience as a deckhand, industrial cleaner, and a construction worker. (Doc. 10, PageID.240). Prince's last date of work was in August 2019 as a deckhand. (Doc. 10, PageID.259, 995). Prince alleged that he is unable to work due to seizure disorder, migraine headache disorder, diabetes mellitus, obesity, and hearing loss. (Doc. 10, PageID.642).

## IV. ALJ'S DECISION

The ALJ considered all the evidence of record and evaluated Prince's claim in accordance with the five-step sequential evaluation process set forth in the regulations. (Doc. 10, PageID.639-653). The ALJ determined Prince last met the insured status requirements of the Act on December 31, 2024 ("date last insured"). (Doc. 10, PageID.642). At step one of the sequential disability evaluation, the ALJ found Prince had not engaged in substantial gainful activity from his alleged onset date through his date last insured. (Doc. 10, PageID.642). At step two, the ALJ found that through his date last insured, Prince had the following severe impairments: seizures, migraine headache disorder, diabetes mellitus, obesity, and hearing loss. (Doc. 10, PageID.642). At step three, the ALJ determined, through the date last insured, Prince did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 10, PageID.643-644).

Before proceeding to step four, the ALJ assessed Prince's RFC through the date last insured. (Doc. 10, PageID.40-53). She found Prince could perform a restricted range

4

of medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c). Specifically, the ALJ found:

> The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is unable to climb ladders, ropes, or scaffolds. He cannot perform work involving loud noise exposure. He must avoid all exposure to heights and hazards and cannot perform work that would require operation of automotive equipment.

(Doc. 10, PageID.644-45). At step four, the ALJ found Prince was unable to perform any past relevant work. (Doc. 8, PageID.651). At step five, relying on testimony from a vocational expert, the ALJ found that through the date last insured, given Plaintiff's RFC and vocational profile, there were jobs existing in significant numbers in the national economy that he could perform, such as a dining room attendant (Dictionary of Occupational Titles (DOT) No. 311.677-018), motor vehicle assembler (DOT No. 806.684-010), and janitor (DOT No. 358.687-010). (Doc. 10, PageID.651-652). Based on this analysis, the ALJ found Prince not disabled within the meaning of the Act from the alleged onset date September 1, 2019, through the date of her decision on June 21, 2024. (Doc. 10, PageID.652).

## V. STANDARD OF REVIEW

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E),1382(a)(1)-(2). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a

6

reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## VI. DISCUSSION

Prince claims the ALJ erred in making an RFC determination that is not supported by substantial evidence and thereby concluding that he can perform jobs existing in significant numbers in the national economy. Specifically, Prince alleges the ALJ erred in rejecting the opinion of the consultative examining physician, Dr. Stephen Chromiak, finding that his opinion was speculative and inconsistent with other evidence in the record. (Doc. 11, PageID.1373). Prince also alleges that the ALJ merely glanced at the medical records that were submitted after the initial hearing in 2020. (Doc. 11, PageID.1374). Finally, Prince asserts that the ALJ provided no restrictions based on his severe impairment of migraine headache disorder and that the limitations in the RFC only addressed his seizure activity. (Doc. 11, PageID.1374-75).

### A. Evaluation of Medical Opinions

Prince makes a general allegation that the ALJ erred by rejecting the opinion of Dr. Chromiak in finding that his opinion was speculative and inconsistent with other

7

evidence in the record. (Doc. 11, PageID.1373). Dr. Chromiak performed an evaluation of Prince in January 2020 at the request of the Disability Determination Service. (Doc. 10, PageID.609-617 – Exhibit 9F). Other than a blanket allegation of error, Prince does not make any argument as to why the ALJ erred in rejecting Dr. Chromiak's opinion. No reversable error has been shown.

Medical opinions are one category of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. § 404.1513(a). A "medical opinion" is "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: ... (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).[3]

---

[3] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. § 404.1520c apply to DIB claims filed on or after March 27, 2017, such as Prince's. The revisions also changed what constitutes a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion" while specifying that "the definition of medical opinion" found in § 404.1527 applies to claims filed before March 27, 2017).

8

The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions or prior administrative medical findings from that medical source together using [the following] factors[,]" *id*.: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c). "The most important factors...are supportability...and consistency..." 20 C.F.R. § 404.1520c(a). *Accord* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors...when... articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record[,]" *id*., unless the

Commissioner "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported...and consistent with the record...but are not exactly the same..." *Id*. § 404.1520c(b)(3).

> The ALJ provided the following analysis of Dr. Chromiak's medical opinion:
>
> The report in Exhibit 9F is not persuasive. The information seems to suggest that occurrence of any seizures, regardless of frequency, would preclude work activity, and that only "minor memory lapses" would hamper his ability to obtain and keep employment. These assessments are speculative and inconsistent with the other evidence in the record as well as notably broad in scope with regard to the assertions for seizure frequency. The conclusion from this medical source assumes vocational information outside of the provider's specialization. Moreover, the seizure frequency and treatment, particularly at that time, is notably at odds with the conclusion in this report. The statements are not well supported nor are they consistent with the record.

(Doc. 10, PageID.650). The ALJ's analysis considered Dr. Chromiak's opinion under the factors in 20 C.F.R. § 404.1520c and sufficiently explains why the ALJ found Dr. Chromiak's opinion unpersuasive. Prince has failed to articulate why this analysis does not comply with the requirements for considering medical opinions and has not convinced the undersigned that the ALJ's conclusion was based on an irrational view of the record as a whole. The Court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *See Chester*, 792 F.2d at 131. Accordingly, the Court will not disturb the ALJ's decision to find Dr. Chromiak's opinion unpersuasive.

**B. Consideration of Medical Records**

Prince alleges it "appears that the Administrative Law Judge merely glanced at the many medical records that were submitted after the initial hearing in 2020." (Doc. 11, PageID.1374). Prince then discusses records regarding his treatment of seizures in 2021 through 2023, presumably to imply that these records demonstrate a greater degree of

impairment than what was included in the RFC and that the RFC is therefore not based on substantial evidence. (Doc. 11, PageID.1374). The Commissioner, on the other hand, asserts that the ALJ properly considered all the relevant evidence in assessing Plaintiff's RFC, including Prince's own statements, his treatment history, objective medical records, and medical opinions, and Prince has not shown that his impairments exceed the limitations included in his RFC. (Doc. 12, PageID.1381-86).

The essential question is whether the ALJ's assessment of his medical condition in formulating his RFC was based on substantial evidence. A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. *Id*. at *3.

It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. See 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, CA 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

Prince asserts that the ALJ did not sufficiently account for his medical records from 2021 through 2023, which "showed compliance with medication, medication increases, and a diagnosis of staring seizure, not merely tonic clonic seizures." (Doc. 11, PageID.1374). Plaintiff then cites to specific treatment records regarding his seizures from October 29, 2021, through January 12, 2023. (Doc. 11, PageID.1374). First, the ALJ's decision did consider Plaintiff's seizure treatment records from this time period. (Doc. 10, PageID.648). Second, the ALJ's decision indicates that records from this time period were not given controlling weight in determining Prince's limitations because the ALJ found that more recent records showed an improvement in Plaintiff's condition and demonstrated

that his seizure frequency was less than the 2-3 seizures per month he reported having throughout that period. On this point, the ALJ explained:

> With regard to his seizures, while it is noted that the recent records have characterized these seizures as intractable in the more recent records, the treatment has remained only minimally adjusted and the frequency of treatment is quite conservative. He has requested no changes to his medications, and the minimal precautions against driving and hazards were advised consistently. Furthermore, the documented frequency of breakthrough seizures has justified some increased treatment but the most recent suggests that his medications were actually reduced. He was admitted March 2023 to USA neurology for continuous EEG monitoring, but the EEG at that time showed no evidence of focal epileptic abnormalities. Given no seizures recorded during the continuous EEG it was recommended that he stop the zonisamide and Aptiom and continue the gabapentin only in this most recent 2024 record. The claimant's report of frequency was 2-3 times a month prior to the hospitalization (per his report) at that time, but the neurologist's request to remove both seizure medications entirely leaving only gabapentin is at odds (in terms of the severity and resulting workplace limitations) with the repeated indication that they have been effective previously, and the claimant acknowledged rather long gaps without seizures in the 2023 records. He himself was reluctant to remove the long-time seizure medication (Exhibit 22F). In fact, in October 2023, the claimant reported a two-month period that was seizure-free. While this was notably less time than would be required to reinstate his driving under state law, it is certainly inconsistent with the report that he had 2-3 seizures a month consistently throughout this period....Even returning back to January 2023, when he saw the neurologist before the EEG, despite reporting staring episodes then, he had "another breakthrough seizure with generalized convulsions and loss of consciousness 3 months ago." Therefore, even at this point, just prior to the referral for the increased testing, the claimant confirmed that there was a single seizure over the last three months despite the more recent subjective 2-3 seizures a month (Exhibit 19F). And again, the testing performed just after this in March 2023 did not show epileptiform activity, and the conclusion was that likely the seizures were psychogenic in nature. Regardless, in January 2023, the infrequency is notable because he clarified that the last episode was two months ago, and he requested no change in medications at the follow-up visit in October (Exhibit 21F/2, see also 19F). Back to the 2022 records, not only were there rather infrequent visits, the claimant denied having recent generalized convulsions in May 2022. At that point, he had only two staring spells. He reported just one

> headache a week. Given the infrequent nature of his symptoms this record even notes that the doctor felt that the EEG could be deferred (Exhibit 18F). All of these factors (reduction of medications, negative testing, and his own subjective reports of frequency in the past) are at odds with the most recent 2024 recitation of his seizure frequency and more consistent instead with the plan to remove his two medications in 2023-2024 and further adjust treatment to even better control his seizures.

(Doc. 10, PageID.648-649). Accordingly, the ALJ considered the relevant medical evidence and clearly explained why she found the most recent medical evidence supportive of her conclusion that Plaintiff's seizures were not as frequent, and therefore not a limiting, as he reported. Nonetheless, the ALJ did still include some restrictions in Prince's RFC to address the impact of his seizures.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the transcript and having considered the arguments made by Prince, the Court finds that, even though there may be some contrary evidence concerning the severity of his impairment due to his seizures, the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

## C. Restrictions Based on Migraines

Prince asserts that the ALJ provided no restrictions based on his severe impairment of migraine headache disorder, which would affect his ability to work, and that the limitations in his RFC only addressed his seizure activity. (Doc. 11, PageID.1374-75).

14

However, the ALJ explicitly states that Prince's migraines were considered and limitations in the RFC include restrictions based on Prince's migraines:

> Nevertheless, given the alleged onset date and ongoing considerations of his longitudinal history, the residual functional capacity limitations do address the impact of the claimant's seizures, headaches, and staring spells, given their objectively documented frequency, duration, and severity. Moreover, the restrictions regarding hazards both address these impairments and more than sufficiently address his hearing loss that has been reported, but he also is precluded from loud noise exposure given the hearing impairment, as well as the headache disorder.

(Doc. 10, PageID.649). Because the ALJ clearly considered Prince's migraines in determining his RFC, the undersigned finds no merit in this argument.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **21st** day of **November, 2025**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**

15